IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PATRICK J. DUNFEE, )
 )
 Plaintiff, )
 )
 v. ) C.A. No. N14C-12-031 JRJ
 )
NEWARK SHOPPING CENTER )
OWNER LLC, et al., )
 )
 Defendants/Third Party Plaintiffs, )
 )
 v. )
 )
FRANCIS POLLINGER & SONS, )
INC., et. al., )
 )
 Third Party Defendants. )

## OPINION

Date Submitted: November 16, 2015
Date Decided: February 16, 2016

*Upon Third-Party Defendant Pennsylvania National Mutual Casualty Insurance Company's Partial Motion to Dismiss*: **GRANTED.**

*Upon Third-Party Defendant Francis Pollinger & Sons, Inc.'s Partial Motion to Dismiss*: **GRANTED.**

*Upon Third-Party Defendant Pratt Insurance, Inc.'s Motion to Dismiss Third Party Complaint Pursuant to Rule 12(b)(6)*: **DENIED in part and Granted in part.**

Timothy A. Dilon, Esquire, McCann & Wall, Inc, Wilmington, DE, Attorney for Plaintiff.

Brett Norton, Esquire, Marks, O'Neill, O'Brien, Doherty, & Kelly, P.C., Wilmington, DE, Attorney for Defendants/Third-Party Plaintiffs Newark Shopping

Center Owner, LLC's, Atlantic Realty Companies, Inc., and Arc Management, LLC.

William R. Adams, Esquire, Dickie, McCamey & Chilcote, P.C., Wilmington, DE, Attorney for Third-Party Defendant Pratt Insurance Agency, Inc.

Mary E. Sherlock, Esquire, Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP, Dover, DE, Attorney for Third-Party Defendant Pennsylvania National Mutual Casualty Insurance Company.

Danielle K. Yearick, Esquire, Tybout Redfearn & Pell, Wilmington, DE, Attorney for Third-Party Defendant Francis Pollinger & Sons Inc.

**Jurden, P.J.**

# I. INTRODUCTION

Before the Court is Third-Party Defendant Pennsylvania National Mutual Casualty Insurance Company's Partial Motion to Dismiss ("Penn National's Partial Motion to Dismiss"),[1] Third-Party Defendant Francis Pollinger & Sons, Inc.'s Partial Motion to Dismiss ("Pollinger's Partial Motion to Dismiss"),[2] and Third-Party Defendant Pratt Insurance Agency, Inc.'s Motion to Dismiss Third Party Complaint Pursuant to Rule 12(b)(6) ("Pratt's Motion to Dismiss").[3]

# II. BACKGROUND

Defendant/Third-Party Plaintiff Newark Shopping Center Owner, LLC ("NSC") owns the Newark Shopping Center in Newark, Delaware.[4] NSC entered into a contract ("AIA Contract") with Third-Party Defendant Francis Pollinger & Sons, Inc. ("Pollinger") for Pollinger to perform roofing work on the Newark Shopping Center.[5] Pursuant to the AIA Contract, Pollinger was to "supervise and direct the Work" and "be solely responsible for and have control over construction . . . ."[6]

---

[1] Third-Party Defendant Pennsylvania National Mutual Casualty Insurance Company's Partial Motion to Dismiss the Third-Party Complaint of Atlantic Realty Companies, Inc. and ARC Management, LLC (Trans. ID. 57964564).

[2] Oct. 15, 2015 Letter filed by Franics Pollinger & Sons, Inc. (Trans. ID. 58024583).

[3] Brief in Support of Third Party Defendant, Pratt Insurance, Motion to Dismiss Third Party Complaint Pursuant to Rule 12(b)(6) (Trans. ID. 57715717).

[4] Third Party Complaint of Newark Shopping Center Owner, LLC, Atlantic Realty Companies, Inc., and ARC Management, LLC ¶ 2 ("Third-Party Compl.") (Trans. ID. 57575481).

[5] Third-Party Compl., Ex. 1 ("AIA Contract").

[6] AIA Contract § 9.2.1.

Plaintiff Patrick J. Dunfee ("Dunfee") filed a Complaint against NSC, Atlantic Realty Companies, Inc. ("Atlantic Realty"), and ARC Management, LLC ("ARC Management") (collectively "Third-Party Plaintiffs"), alleging that he fell and injured himself at the Newark Shopping Center while working as a roofer for Pollinger.[7] Atlantic Realty is a real estate development company, and ARC Management is a property management company with responsibilities at the Newark Shopping Center.[8] The Complaint does not allege that Dunfee's employer, Pollinger, was negligent. Rather, Dunfee alleges that the Third-Party Plaintiffs' negligence caused Dunfee's injuries.

In response to the Complaint, Third-Party Plaintiffs filed a Third-Party Complaint against Pollinger, Pratt Insurance Agency, Inc. ("Pratt"), and Pennsylvania National Mutual Casualty Insurance Company ("Penn National"). Pratt is Pollinger's insurance broker or agent, and Penn National issued Pollinger's liability insurance policy.[9]

The nexus of the Third-Party Plaintiffs' claims against Pratt and Penn National is the AIA Contract entered into by NSC and Pollinger. Section 9.15.1 of the AIA Contract provides:

> To the fullest extent permitted by law, the Contractor [Pollinger] shall indemnify and hold harmless the Owner, Architect, Architect's

---

[7] Amended Complaint (Trans. ID. 57140816).
[8] Third-Party Compl. ¶¶ 3–4.
[9] *Id.* ¶¶ 6–7.

consultants and agents and employees of any of them from and against claims . . . arising out of or resulting from performance of the Work . . . but only to the extent caused by the negligent acts of omissions of the Contractor . . . .

Section 17.1 further provides:

The Contractor shall cause the commercial liability coverage required by the Contract Documents to include: (1) the Owner, the Architect and the Architect's Consultants as additional insureds for claims cause in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

## III. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6), "all well-pleaded allegations must be accepted as true," and if the plaintiff can recover "under any reasonably conceivable set of circumstances susceptible of proof under the complaint," the motion to dismiss will be denied.[10]

---

[10] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978). Although matters outside the pleadings were submitted in connection with Pratt's Motion to Dismiss, the Court did not consider these materials, and it will decide the Motion on the basis upon which it was submitted to the Court. Super. Ct. Civ. R. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleading are presented to *and not excluded by the Court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."); *see also Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007) (noting that parties should have adequate notice if the Court intends to convert a motion to dismiss into a motion for summary judgment).

## IV.  DISCUSSION

### A.  Penn National's Partial Motion to Dismiss

Third-Party Plaintiffs seek a declaratory judgment stating that Penn National has a duty to defend and indemnify Third-Party Plaintiffs.  Penn National moves to dismiss against Atlantic Realty and ARC Management, but not NSC.

The Third-Party Complaint alleges: (1) Penn National issued a commercial general liability policy to Pollinger; (2) Third-Party Plaintiffs "were to be named as Additional Insureds under the policy *pursuant to Section 17.1 of the [AIA] Contract . . . ;*" (3) Penn National improperly denied Third-Party Plaintiffs coverage under Pollinger's insurance policy; and, therefore, (4) Penn National "must provide coverage as called for in the [AIA] Contract."[11]

Section 17.1 of the AIA Contract states, "[t]he Contractor shall cause the commercial liability coverage required by the [AIA] Contract Documents to include: (1) the Owner, the Architect and the Architect's Consultants as additional insureds . . . ."[12]  Third-Party Plaintiffs do not allege that any of the Third-Party Plaintiffs are an Architect or an Architect's Consultant.  At issue is the definition of "Owner" under the AIA Contract.

In relevant part, the AIA Contract reads:

---

[11] Third-Party Compl. ¶¶ 82–90 (emphasis added).
[12] *See Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at \*4 (Del. Super. 2014) (noting that when "an extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference" a motion to dismiss need not be converted into a motion for summary judgment).

> [T]he Owner [is]:
> (Name, address and other information)
> Newark Shopping Center Owner, LLC
> c/o Atlantic Realty Companies
> 8150 Leesburg Pike
> Vienna, VA. 22182[13]

This wording of the AIA Contract is clear and unambiguous.[14] The "Owner" is NSC. The evidence highlighted by Third-Party Plaintiffs—that Atlantic Realty was listed as a "c/o" address and that the AIA Contract was signed by an employee of ARC Management—do not undermine this conclusion.

The AIA Contract requires Pollinger to add the "Owner," NSC, as an additional insured to Pollinger's insurance with Penn National. Neither Atlantic Realty nor ARC Management is the Owner under the AIA Contract. Because parol evidence cannot be used to vary or contradict the clear and unambiguous terms of a contract, additional discovery would not substantiate the allegations made in the Third-Party Complaint.[15] Therefore, Penn National's Partial Motion to Dismiss is **GRANTED.**

---

[13] AIA Contract at 1.

[14] *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)) ("[A] contract's construction should be that which would be understood by an objective, reasonable third party," looking at the contract as a whole.).

[15] *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("[I]n contract disputes where the language at issue is clear and unambiguous . . . the parol evidence rule bars the admission of evidence from outside the contract's four corners to vary or contradict that unambiguous language.") (internal citations omitted).

## B. Pollinger's Partial Motion to Dismiss

The Third-Party Complaint alleges the following causes of action against Pollinger: (1) Third-Party Plaintiffs are "entitled to complete or partial, contractual (express or implied), statutory, or common law indemnification;" (2) breach of the AIA Contract by failure to add Third-Party Plaintiffs as additional insureds; and (3) declaratory judgment based on Section 17.1 of the AIA Contract.[16]

Pollinger submitted a letter to the Court on October 15, 2015, joining Penn National's Partial Motion to Dismiss on the basis that "[n]o privity of contract, contract, legal or common law relationship is established in the third party complaint between Pollinger and Atlantic [Realty] or ARC [Management]." As discussed above, neither Atlantic Realty nor ARC Management is the "Owner" under the AIA Contract. Therefore, Pollinger's Partial Motion to Dismiss is **GRANTED.**

## C. Pratt's Motion to Dismiss

The Third-Party Complaint alleges the following causes of action against Pratt: (1) "contractual (express or implied), statutory, or common law indemnification;" (2) breach of contract based Pratt's alleged failure to secure of maintain insurance coverage for the benefit of Third-Party Plaintiffs; (3) professional negligence; (4) consumer fraud based on Pratt's alleged false

---

[16] Third-Party Compl. ¶¶ 39–41, 42–49, 91–99.

8

representations made about Third-Party Plaintiffs status as additional insured under Pollinger's insurance policy; and (5) breach of the implied covenant of good faith and fair dealing.[17]

### 1. Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Professional Negligence, and "Indemnification"

Section 17.1 of the AIA Contract provides:

> The Contractor shall cause the commercial liability coverage required by the Contract Documents to include: (1) the Owner . . . as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions . . .

Third-Party Plaintiffs argue that, although Pratt was not a party to the AIA Contract, Third-Party Plaintiffs were intended beneficiaries of a contract between Pratt and Pollinger, whereby Pratt would secure the insurance required in the AIA Contract.[18] They further allege that Pratt was professionally negligent in failing to procure the insurance requested by Pollinger, and that Pratt violated the implied covenant of good faith and fair dealing by representing that it had obtained the

---

[17] *Id.* ¶¶ 39–81.

[18] *See Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. 1990) ("It is settled law in Delaware that a third-party may recover on a contract made for his benefit. However, in order for there to be a third-party beneficiary, the contracting parties must intend to confer a benefit. Where it is the intention of the promisee to secure a performance for the benefit of another, either as a gift or in satisfaction of an obligation to that person, and the promisee makes a contract to do so, then such a third person has the right to enforce the contract against the promisor. If, however, the parties to the contract did not intend to benefit the third-party but the third-party happens to benefit from the performance of the contract either indirectly or coincidentally, such third person has no rights under the contract.") (internal citations omitted); *see also* Third-Party Compl. ¶ 45 ("*In consideration for the premium or other good and valuable payment*, Pratt . . . ").

requisite coverage.[19] These allegations are tied to Third-Party Plaintiffs' alleged status as third-party beneficiaries and are sufficiently pled to survive a motion to dismiss under Rule 12(b)(6).[20] Pratt's Partial Motion to Dismiss the claims of breach of contract, breach of the covenant of good faith and fair dealing, professional negligence, and "indemnification" is **DENIED.**

### 2. Consumer Fraud

The Delaware Consumer Fraud Act provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise . . . is an unlawful practice.[21]

Third-Party Plaintiffs allege that Pratt violated the Consumer Fraud Act when it "made a false representation by having knowledge of the terms [of the AIA Contract] . . . and with that knowledge failed to obtain or procure the requisite insurance coverage" and when it "concealed the fact that the Penn National policy did not specifically name []Third Party Plaintiffs as additional insureds."[22] The

---

[19] Third-Party Compl. ¶¶ 58, 79.

[20] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("[E]ven vague allegations are 'well-pleaded' if they give the opposing party notice of the claim." (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002))); *see* Third-Party Compl. ¶¶ 19, 45.

[21] 6 *Del. C.* § 2513. "Merchandise" is defined by the Consumer Fraud Act as "any objects, wares, goods, commodities, intangibles, real estate or *services.*" 6 *Del. C.* § 2511 (emphasis added).

[22] Third. Am. Compl. ¶¶ 71–72.

only "sale" of "merchandise" alleged is the transaction between Pratt and Pollinger, whereby Pratt agreed to secure insurance as required by the AIA Contract.[23] However, the alleged misrepresentation and concealment stems from the issuance of the Certificate of Insurance.[24] "[P]ost-sale representations which are not connected to the sale or advertisement . . . do not constitute consumer fraud under the Act."[25] Third-Party Plaintiffs have not sufficiently alleged a cause of action under the Consumer Fraud Act. Pratt's Partial Motion to Dismiss the claim of consumer fraud is **GRANTED.**

## CONCLUSION

For the foregoing reasons, Pratt's Motion to Dismiss is **DENIED in part and GRANTED in part**, Penn National's Partial Motion to Dismiss is **GRANTED**, and Pollinger's Partial Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED**

_____
Jan. R. Jurden, President Judge

---

[23] *Id.* ¶ 45 ("In consideration for the premium or other food and valuable payment, Pratt represented and issued a COI that listed NSC[] as the Certificate Holder in connection with the roofing work . . . .").
[24] *Id.* ¶ 66.
[25] *Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066, 1074 (Del. Super. 1989).

11